UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| ZIMMER, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:16-cv-355-JD-SLC |
| | ) | |
| BEAMALLOY RECONSTRUCTIVE | ) | |
| MEDICAL PRODUCTS, LLC, and | ) | |
| BEAMALLOY TECHNOLOGIES, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## FIRST AMENDED COMPLAINT

Plaintiff Zimmer, Inc. ("Zimmer") for its First Amended Complaint, states as follows:

### Parties and Jurisdiction

1.  This Court has jurisdiction of this case based on diversity of citizenship under 28 U.S.C. § 1332.  The amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

2.  Zimmer is a Delaware corporation with its principal place of business at 345 East Main Street, Warsaw, Indiana 46581.  Zimmer designs, develops, manufactures and markets implants, devices and related products for use in orthopedic surgery, including reconstructive, trauma, spinal and dental applications.

3.  Beamalloy Reconstructive Medical Products, LLC ("Beamalloy") is an Ohio limited liability company with its principal place of business at 8270 Estates Parkway, Plain City, Ohio 43064.  Beamalloy's sole member is Robert J. Borel ("Borel"), a citizen of Florida. Beamalloy has represented that it is engaged in the manufacture of coatings for precision-engineered products, tooling and instruments in the orthopedics industry.

4. Beamalloy Technologies, LLC ("Beamalloy Technologies") is an Ohio limited liability company with its principal place of business at 401 North Front Street, Suite 350, Columbus, Ohio 43215. The members of Beamalloy Technologies are Borel; Arnold Deutchman, a citizen of Ohio; Alfred Friedman, a citizen of Ohio; Bruce Lazear, a citizen of Ohio; Dave Merrick, a citizen of Pennsylvania; Michael Morosky, a citizen of Ohio; Robert Partyka, Jr., a citizen of Ohio; and ESK Industries, Inc., a dissolved Ohio corporation with its principal place of business formerly located in Columbus, Ohio.

5. Venue is proper in this Court under 28 U.S.C. §1391. Beamalloy and Beamalloy Technologies conduct substantial business in, and are subject to personal jurisdiction in, this district and a substantial part of the events or omissions giving rise to this litigation, including meetings and negotiations at Zimmer's headquarters in Warsaw, Indiana, occurred in this district.

6. Moreover, pursuant to their License and Supply Agreement, and also an Equipment Lease, Zimmer and Beamalloy agreed that any legal action relating to those agreements may be commenced and maintained in the United States District Court for the Northern District of Indiana. Zimmer and Beamalloy further agreed to submit to the jurisdiction of this Court and waive any right to challenge or otherwise raise questions of personal jurisdiction or venue in any action commenced in this Court.

7. Beamalloy and Beamalloy Technologies also granted security interests to Zimmer, described further below, providing that "the United States District Court for the Northern District of Indiana" has jurisdiction over any action or proceeding involving the security interests. Beamalloy and Beamalloy Technologies also "irrevocably and

unconditionally" agreed to submit to the jurisdiction of this Court for purposes of any action or proceeding regarding the security interests.

## The License and Supply Agreement

8. Zimmer and Beamalloy entered into a License and Supply Agreement as of September 30, 2011 (the "License and Supply Agreement"). A true and correct copy of the License and Supply Agreement, as amended, is attached as Exhibit A.

9. Under the License and Supply Agreement, Beamalloy granted to Zimmer a "fully-paid up license to research, develop, make, have made, promote, use, market, sell, offer for sale, distribute, import/export and otherwise commercialize" products using Beamalloy technology for coatings using a physical surface treatment process known as ion beam enhanced deposition (the "IBED Process").

10. The License and Supply Agreement contemplated that before Zimmer could launch any implant, instrument or device to which a titanium nitride coating has been applied using the IBED Process (the "Products"), Beamalloy must satisfy certain commercialization/validation milestones (the "Commercialization/Validation Milestones").

11. The Commercialization/Validation Milestones included, among other things, that Beamalloy satisfy technical milestones set forth in Exhibit C of the License and Supply Agreement. The technical milestones included tests for scratch/adhesion and surface roughness to ensure that the Products coated using the IBED Process are safe and high quality.

12. In the event Beamalloy satisfied all Commercialization/Validation Milestones, it would earn a commercialization/validation fee (the "Commercialization/ Validation Fee").

13. Under Section 4.2 of the License and Supply Agreement, Zimmer agreed to utilize Beamalloy as its exclusive supplier of the IBED Process Services for the Products. And

Beamalloy, in turn, agreed to supply the IBED Process Services to Zimmer. Under the License and Supply Agreement, the IBED Process Services required Beamalloy to "apply a titanium nitride coating using the IBED Process to precision engineered products . . . in accordance with the Specifications and all Applicable Laws . . . ."

14. The License and Supply Agreement sets forth a minimum quantity of products Zimmer agreed to order for each one-year period following the Supply Commencement Date (the "Annual Minimum Unit Requirement"). However, under Section 4.15(c) of the License and Supply Agreement, the Annual Minimum Unit Requirements shall be reduced if "any occurrence, development or another circumstance arises that reasonably calls into question the safety or efficacy of any Product or might reasonably pose a substantial legal liability on Zimmer if Zimmer continued sales of the Product . . . ."

15. In the third amendment to the License and Supply Agreement, the parties defined the Supply Commencement Date as January 1, 2016. In addition, Zimmer agreed to pay Beamalloy a $990,000 advance against Zimmer's payment obligations for future purchases of IBED Process Services.

16. In the five years since the parties entered into the License and Supply Agreement, Beamalloy has attempted, but failed, to supply IBED Process Services in the manner required under the agreement. In particular, Beamalloy has been unable to apply titanium coating using the IBED Process in a manner that adheres to implants properly and avoids surface scratching that calls into question the safety and efficacy of the Products.

17. Zimmer has gone above and beyond its obligations under the License and Supply Agreement – by paying for technical experts, analyses, and investing substantial time and resources testing and assisting Beamalloy – in an effort to help Beamalloy determine why the

4

problems with the IBED Process are occurring.  Nevertheless, Beamalloy has been unable to determine the root cause of the problems and has failed to satisfy the technical milestones in the License and Supply Agreement or demonstrate that it is capable of providing the IBED Process Services required under the agreement.

18. On October 4, 2016, Zimmer notified Beamalloy that it was in default of several material obligations under the License and Supply Agreement.  A true and correct copy of Zimmer's notification is attached as Exhibit B.  In particular, Zimmer notified Beamalloy that it (a) failed to complete the Commercialization/Validation Milestones, (b) was in default of its obligation to provide IBED Process Services, and (c) was in default of its obligation to earn or repay the $990,000 deposit made by Zimmer pursuant to the third amendment.

19. By letter dated October 13, 2016, Beamalloy denied that it was in default of any of its obligations under the License and Supply Agreement.  In addition, Beamalloy provided notice of its contention that Zimmer is in default of its obligations under Sections 3.4 and 4.15 of the License and Supply Agreement.  A true and correct copy of Beamalloy's notification is attached as Exhibit C.

20. On November 15, 2016, the parties met and conferred, as required by Section 10.2(a) of the License and Supply Agreement, in an attempt to resolve their dispute.  No resolution was reached and on November 17, 2016, Zimmer provided notice of termination of the License and Supply Agreement.  A true and correct copy of Zimmer's notice is attached as Exhibit D.  On November 29, 2016, Beamalloy demanded payment of "in excess of $9.77 million."  Zimmer rejected this demand by letter dated November 30, 2016.

**The Lease and Security Agreements**

21. As part of the License and Supply Agreement, Zimmer and Beamalloy entered into an Equipment Construction Agreement pursuant to which Beamalloy agreed to construct, install, test and sell to Zimmer certain equipment to be used by Beamalloy in the performance of IBED Process Services under the License and Supply Agreement (the "Equipment"). Zimmer and Beamalloy also entered into an Equipment Lease executed on September 30, 2011 (the "Lease"). A true and correct copy of the Lease is attached as Exhibit E. Pursuant to the Lease, Zimmer agreed to lease the Equipment to Beamalloy, and Beamalloy agreed to pay Zimmer monthly rent.

22. To secure Beamalloy's obligations under the Lease, Beamalloy executed a Security Agreement dated as of September 30, 2011 and a Patent Security Agreement dated as of September 30, 2011. True and correct copies of the Security Agreement and the Patent Security Agreement are attached as Exhibits F and G. In addition, Beamalloy Technologies executed a Security Agreement dated as of September 30, 2011 to secure Beamalloy's obligations under the Lease. A true and correct copy of the Beamalloy Technologies Security Agreement is attached as Exhibit H. Exhibits F, G, and H are collectively referred to as the "Beamalloy Security Agreements." The Beamalloy Security Agreements granted Zimmer a security interest in assets and property of Beamalloy and Beamalloy Technologies as more particularly described in the Beamalloy Security Agreements (the "Collateral").

23. Zimmer perfected its security interests in the Collateral on October 3, 2011, by filing a UCC-1 financing statement with the Ohio Secretary of State as Instrument Number 201127700168.

24. Beamalloy constructed the Equipment and is now the lessee of the Equipment pursuant to the Lease.  Beamalloy has failed to make any lease payments to Zimmer under the Lease.

### Count I – Breach of License and Supply Agreement
(Against Beamalloy)

25. Zimmer restates and incorporates by reference each of the foregoing paragraphs 1 through 24 as if fully set forth herein.

26. Zimmer and Beamalloy entered into the License and Supply Agreement pursuant to which Beamalloy agreed to satisfy the Commercialization/Validation Milestones and to provide IBED Process Services to Zimmer.

27. Beamalloy breached the License and Supply Agreement by, among other things, failing to satisfy the Commercialization/Validation Milestones, failing to provide IBED Process Services to Zimmer, and failing to earn or repay the $990,000 deposit against future IBED Process Services.

28. Beamalloy's breaches of the License and Supply Agreement have resulted in damages to Zimmer.

29. All conditions precedent to Zimmer's claim for breach of the License and Supply Agreement have been performed, have occurred, or have been excused.

### Count II – Declaratory Judgment
(Against Beamalloy)

30. Zimmer restates and incorporates by reference each of the foregoing paragraphs 1 through 29 as if fully set forth herein.

31. Indiana's Declaratory Judgment Act, Indiana Code § 34-14-1-2, provides that any person interested under a written contract may have determined any question of construction or validity arising under the contract.

32. The License and Supply Agreement has been terminated and Zimmer owes Beamalloy no remaining obligations under it except with respect to confidentiality under Article 9. Beamalloy, however, contends that it has satisfied the Commercialization/Validation Milestones and that Zimmer must satisfy its Annual Minimum Unit Requirement obligations under the agreement.

33. Zimmer disputes that Beamalloy has satisfied the Commercialization/Validation Milestones. Furthermore, even if Beamalloy had satisfied the Commercialization/Valuation Milestones, the License and Supply Agreement is of no further force and effect and, before it was terminated, the adhesion and surface scratching problems resulting from Beamalloy's IBED Process were an occurrence, development or other circumstance under Section 4.15(c) of the License and Supply Agreement that relieved Zimmer of any Annual Minimum Unit Requirements obligation.

34. Pursuant to Indiana Code § 34-14-1-2, Zimmer seeks a declaratory judgment that, prior to termination of the agreement, Beamalloy never satisfied the Commercialization/Validation Milestones under the License and Supply Agreement.

35. Alternatively, Zimmer seeks a declaratory judgment that, prior to termination, it had no Annual Minimum Unit Requirements obligation under the License and Supply Agreement because the adhesion and surface scratching problems resulting from the IBED Process constituted an occurrence, development or other circumstance that reasonably called into question the safety or efficacy of any Product or might reasonably pose a substantial legal

liability on Zimmer if Zimmer sold any Products using the IBED Process to apply titanium coating.

### Count III – Breach of Lease
### (Against Beamalloy)

36.     Zimmer restates and incorporates by reference each of the foregoing paragraphs 1 through 35 as if fully set forth herein.

37.     Zimmer and Beamalloy entered into the Lease pursuant to which Beamalloy agreed to pay Zimmer rent for its use of the Equipment.

38.     Beamalloy has breached the Lease by failing to make any rent payments to Zimmer.

39.     Beamalloy's failure to pay rent has resulted in damages to Zimmer.

40.     All conditions precedent to Zimmer's claim for breach of the Lease have been performed, have occurred, or have been excused.

### Count IV – Replevin
### (Against Beamalloy and Beamalloy Technologies)

41.     Zimmer restates and incorporates by reference each of the foregoing paragraphs 1 through 40 as if fully set forth herein.

42.     By virtue of Beamalloy's defaults under the Lease, Zimmer has the right to foreclose its security interests in and to the Collateral and to recover all of its costs, including reasonable attorneys' fees, incurred in collecting Beamalloy's indebtedness under the Lease and foreclosing its security interests in the Collateral.

43.     Zimmer's security interests in the Collateral are valid and subsisting perfected first lien rights which are prior and superior to any interests claimed by any other person.

44.    All conditions precedent to Zimmer's claim for replevin have been performed, have occurred, or have been excused.

WHEREFORE, Plaintiff, Zimmer, Inc., requests that the Court:

(a) award Zimmer damages for Beamalloy's breach of the License and Supply Agreement in an amount to be determined at trial;

(b) enter a declaratory judgment that prior to termination of the License and Supply Agreement Beamalloy did not satisfy the Commercialization/Validation Milestones under the License and Supply Agreement or, alternatively, that, prior to termination, Zimmer had no Annual Minimum Unit Requirements obligation under the License and Supply Agreement because the adhesion and surface scratching problems resulting from the IBED Process constituted an occurrence, development or other circumstance that reasonably called into question the safety or efficacy of any Product or might reasonably pose a substantial legal liability on Zimmer if Zimmer sold any Products using the IBED Process to apply titanium coating;

(c) award Zimmer damages for Beamalloy's breach of the Lease in an amount to be determined at trial;

(d) enter a judgment foreclosing Zimmer's security interests in the Collateral and declaring that Zimmer's rights, title and interest in and to the Collateral are valid and subsisting perfected first lien rights which are prior and superior to any interests claimed by any other person or entity;

(e) grant Zimmer possession of the Collateral to dispose of the same in a commercially reasonable manner pursuant to the Beamalloy Security Agreements and applicable law, and to

apply the proceeds from such disposition first to Zimmer's costs of repossession and sale and then toward Beamalloy's indebtedness under the Lease;

    (f) grant Zimmer the right, at Zimmer's request, to request that the Sheriff of whatever county or counties in which the Collateral is located seize the Collateral from Beamalloy or Beamalloy Technologies and deliver it to Zimmer so that Zimmer can dispose of the same as provided herein; and

    (g) award Zimmer attorneys' fees, costs, and all other just and proper relief.

Respectfully submitted,

FAEGRE BAKER DANIELS LLP


By:  /s/ Ryan M. Hurley

Ryan M. Hurley (# 24956-49)
300 North Meridian Street
Suite 2700
Indianapolis, IN  46204
Telephone:  (317) 237-0300
Facsimile:   (317) 237-1000


*Attorneys for Plaintiff Zimmer, Inc.*