# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| ZIMMER INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO.: 1:16-CV-355-TLS |
| | ) |
| BEAMALLOY RECONSTRUCTIVE | ) |
| MEDICAL PRODUCTS, LLC, and | ) |
| BEAMALLOY TECHNOLOGIES, INC. | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

This matter is before the Court on Plaintiff Zimmer, Inc.'s Motion to Dismiss Count III of the Counterclaim [ECF No. 11] for breach of fiduciary duty. This suit concerns a series of agreements the Plaintiff entered into with Beamalloy Reconstructive Medical Products, LLC ("Beamalloy Reconstructive"), under which Beamalloy Reconstructive was tasked with developing and licensing to the Plaintiff a coating, and a process for applying that coating to the Plaintiff's medical devices. On October 4, 2016, the Plaintiff filed its Complaint against the Defendants, Beamalloy Reconstructive, and Beamalloy Technologies, LLC, and filed its First Amended Complaint [ECF No. 5] on December 22, 2016. The Defendants filed their Answer to the Amended Complaint and First Counterclaim [ECF No. 8] on February 2, 2017. The Plaintiff filed its Motion and accompanying Brief in Support [ECF No. 12] on February 23, 2017. The Defendants filed their Amended Answer and Counterclaim [ECF No. 15] on March 8, 2017. On March 9, 2017, the Defendant filed its Response [ECF No. 18], to which the Plaintiff filed its Reply [ECF No. 21] on March 16, 2017. The Motion is now fully briefed and ripe for ruling.

**FACTUAL ALLEGATIONS**

The Plaintiff, a Delaware corporation with its principle place of business in Indiana, and Beamalloy Reconstructive, an Ohio corporation with its principle place of business in Ohio,[1] entered into a License and Supply Agreement (the "Agreement"), and several related agreements, on September 30, 2011. Under the Agreement, Beamalloy Reconstructive was to develop a process for coating medical devices known as ion beam enhanced deposition (the "IBED Process"). (Counterclaim ¶ 5, ECF No. 15; Agreement § 4.2, ECF No. 1-1.) The coating is intended as a solution for knee implant recipients who have allergies to nickel and chromium, which are present in Cobalt Chromium materials. (*Id.* ¶ 5.) Once Beamalloy Reconstructive developed the IBED Process to the Plaintiff's specifications (as provided for in the Agreement), the Plaintiff was to use Beamalloy Reconstructive as its exclusive supplier for the IBED Process. (*Id.* at ¶¶ 5–7.) Under this arrangement, the Agreement set forth minimum annual quantities that the Plaintiff agreed to order. (*Id.* ¶ 6, Agreement § 4.15.)

Over the course of several years, the Plaintiff worked with Beamalloy Reconstructive to develop the IBED process in accordance with the Agreement. (*Id.* ¶ 7.) The Agreement set forth a series of "[t]echnical [m]ilestones," listed in Exhibit C, that Beamalloy Reconstructive was required to satisfy before triggering the supply commencement date.[2] Among the technical milestones listed, the scratch adhesion/cohesion values that Beamalloy Reconstructive was required to meet[3] were set by both the Plaintiff's research team and Beamalloy Reconstructive.

---

[1] Beamalloy Technologies, LLC is also an Ohio corporation with its principle place of business in Ohio.

[2] Under the Agreement, "[s]upply [c]ommencement [d]ate" means "the date that the first [p]roduct is processed and supplied by Beamalloy [Reconstructive] under this Agreement for commercial sale by [the Plaintiffs]; provided that the [p]arties have first received [m]arketing approval for the [p]roduct in the United State and Europe." (Agreement § 1.1, ECF No 1-1.)

[3] It appears the scratch adhesion/cohesion values go to the viability of the coating.

But the Defendants allege that the Plaintiff then created an additional standard, the Zimmer Engineering Specification, which Beamalloy Reconstructive was required to meet in addition to the former requirement. The Defendants allege it met the requirements of the Zimmer Engineering Specification too. (*Id.* ¶ 7.)

The Defendants allege that the Plaintiff thereafter presented data to the FDA on "the great resistance" of Beamalloy Reconstructive's "coating to scratching and the excellent adhesion to the metal substrate," and as a result, the Plaintiff received FDA approval for the IBED Process in December 2014. (*Id.*) The Plaintiff then presented to the orthopedic community a paper on the technique and results of the Beamalloy Reconstructive coating versus the world's coating leader, Oxinium. (*Id.*)

According to the Defendants, the Plaintiff authorized Beamalloy Reconstructive to commence production in August 2015, triggering the supply commencement date. (*Id.* ¶ 8.) But by January 2016, the parties began to dispute whether Beamalloy Reconstructive had met its obligations under the Agreement, and thus, whether the Plaintiff's commitments under the agreement had been triggered in turn. (*Id.* ¶¶ 8–13.) The Defendants allege that without any warning, the Plaintiff required the Defendants to submit the IBED Process to additional subjective testing known as a "third body wear test," designed by the Plaintiff for "marketing purposes." (*Id.* ¶ 8.) According to the Defendants, the FDA requires a scratch, adhesion/cohesion test for all coatings, but does not require third body wear testing. (*Id.* ¶ 8.) The Defendants allege that the Plaintiff had not previously used third body wear testing in knee implants, and that the third body wear test was not clinically relevant. (*Id.*)

The Defendants allege that although the Plaintiffs acknowledged that Beamalloy Reconstructive had met all technical specifications as required under the Third Amendment of

3

the Agreement, the Plaintiff was aware that when it signed the Third Amendment, the third body wear test for marketing purposes was ongoing and not completed. (*Id.* ¶ 9.) The Defendants allege that to alleviate concerns, Beamalloy Reconstruction recommended additional testing that the Plaintiff declined to execute, including comparative testing with Zimmer Biomet's TiNbN coating on the Vanguard Knee Replacement, testing with particles suspended in solution, testing with smaller metal particles, testing with fewer more clinically relevant particles, and additional testing with a buffed process that resulted in parts that passed the "marketing" third body wear test. (*Id.* ¶ 11.)

The Defendants allege that the Plaintiff has failed and refused to pay Beamalloy Reconstructive the amounts owed to it under the Agreement, "in excess of" $9,700,000, based upon Beamalloy Reconstructive's alleged failure to pass the third body wear test. (*Id.* ¶ 12.) The Defendants allege that although the Plaintiff claims that the Defendants breached the safety and efficacy provision of the Agreement (section 4.15(c)), the Plaintiff has not specified what safety, efficacy, or liability issue exists with Beamalloy's product. (*Id.* ¶ 13.) The Defendants allege that Beamalloy Reconstructive has satisfied its obligations under the Agreement, specifically the commercialization and validation milestone provisions, and therefore, the Plaintiff was obligated to purchase the IBED Process services pursuant to the annual minimum unit requirements. (*Id.* ¶ 15). On November 17, 2016, the Plaintiff terminated the Agreement. (*Id.* ¶ 17.) The Defendants allege this was without cause.

In Count Three of their Counterclaim, the Defendants allege that the Plaintiff concealed from Beamalloy Reconstructive its intention to seek other competing allergy solutions while it continued to require Beamlloy Reconstructive's products to undergo testing not enumerated in the Agreement and contemplated transaction. (*Id.* ¶ 37.) The Defendants also allege that the

Plaintiff failed and refused to modify its testing parameters to represent clinically relevant conditions because the IBED coating may have indeed passed testing conditions. (*Id.*) According to the Defendants, the Plaintiff is currently pursuing another allergy solution, and has medical device products on the market in both Europe and the United States that could not pass the same third body wear test that Beamalloy Reconstructive was required to pass, and therefore, this test was overly burdensome for the Defendants.

## STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint and not the merits of the suit. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). Requirements for stating a claim under the federal pleading standards are straight forward. A pleading that states a claim for relief must set forth "a short and plain statement of the grounds for the court's jurisdiction . . . a short and plain statement of the claim showing that the pleader is entitled to relief," and "a demand for relief sought." Fed. R. Civ. P. 8(a). In considering motions to dismiss for failure to state a claim, the court presumes all well-pleaded allegations to be true, views them in the light most favorable to the plaintiff, and accepts as true all reasonable inferences to be drawn from the allegations. *Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 608 (7th Cir. 1995).

Additionally, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Although the court must accept as true all well-pleaded facts and draw all permissible inferences in the Plaintiff's favor, it need not accept

as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). Legal conclusions can provide a complaint's framework, but unless well-pleaded factual allegations move the claims from conceivable to plausible, they are insufficient to state a claim. *Id.* at 680. A plaintiff can also plead himself out of court if he pleads facts that preclude relief. *See Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011); *Edwards v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007); *McCready v. Ebay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006).

**DISCUSSION**

The Plaintiff argues that the Defendants' Motion should be dismissed with prejudice because the parties' commercial relationship precludes a fiduciary relationship as a matter of law and the Defendants' claim for breach of fiduciary duty "is merely a repackaged version of its breach-of-contract claim," Count I of the Counterclaim.[4] (Pl.'s Br. 1, ECF No. 12.)

**A.  New York Law**

The Plaintiff argues that because the Defendants have admitted that the parties have an arm's length commercial relationship under the Agreement and the related agreements, the Defendants are precluded from raising the argument that a fiduciary relationship existed between the parties. It is undisputed that the parties entered into the following contracts: the Agreement,

---

[4] Under Section 13.2 of the Agreement, the "[A]greement and the transactions contemplated . . . shall be governed by and interpreted in accordance with the law of the State of New York, without regard to the choice of laws principles thereof." The Plaintiff and the Defendants appear to dispute whether New York law or Indiana law applies to the breach of fiduciary duty claim. However, neither party appears to give more than cursory attention to this issue in their briefing. Given the procedural disposition of this case, the Court, at this time, will not rule on this question. Because the Court ultimately finds that the Defendants have not adequately pleaded their breach of fiduciary duty counterclaim, the Court instead will evaluate the claim under both New York and Indiana law for the purposes of this motion.

an equipment and construction agreement, a related equipment lease, a security agreement, and a patent security agreement. (*Id.* ¶ 4; Answer to First Am. Compl. ¶¶ 21-22.)

A breach of fiduciary duty claim sounds in tort rather than contract law. "To prove a common-law tort claim of breach of fiduciary duty under New York law, a plaintiff must demonstrate: '(i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom.'" *Zorbas v. U.S. Trust Co.*, 48 F. Supp. 3d 464, 478–79 (E.D.N.Y. 2014) (quoting *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 138 (2d Cir. 2011)).

"[N]ormally where there is a contract between the parties, no fiduciary duty beyond the terms of the contract will be found." *Zorbas*, 48 F. Supp. 3d at 478–79; *see EBC I, Inc. v. Goldman Sachs & Co.*, 5 N.Y.3d 11, 20 (N.Y. 1987) ("If the parties . . . do not create a relationship of higher trust, courts should not ordinarily transport them to the higher realm of relationship and fashion the stricter duty for them.") But under special circumstances, "a fiduciary duty may be found notwithstanding the existence of a contract—specifically, when there is 'a relationship of higher trust than would arise from . . . the agreement alone.'" *Zorbas*, 48 F. Supp. 3d at 479; *see EBC I, Inc.*, 5 N.Y.3d at 20; *Fillmore E. BS Fin. Subsidiary LLC v. Capmark Bank*, 552 Fed. App'x 13, 17 (2d Cir. 2014).

Thus, a contractual relationship alone, as a matter of law, does not foreclose the Defendants' breach of fiduciary duty claim. Count Three does not fail as a matter of law because breach of fiduciary duty is a factual claim that lies in tort. *Zorbas*, 48 F. Supp. 3d at 479. Nothing in the arms-length contractual relationship entered into by the parties here estops, precludes, or waives the Defendants' ability to assert their claim of breach of fiduciary duty before this court.

But looking at the factual allegations set forth in the Defendant's counterclaim, the Defendants have not adequately pleaded their relationship with the Plaintiff was one of higher

7

trust. The Defendants argue that Beamalloy Reconstructive has clearly alleged the existence of a fiduciary relationship, misconduct, and damages caused by the Plaintiff's misconduct. The Defendants allege that the Plaintiff has exercised power and control over Beamalloy Reconstructive's product. And the Defendants argue that the Plaintiff intentionally required additional unnecessary testing beyond the contract terms at the same time the Plaintiff began secretly pursuing a product competing with Beamalloy Reconstructive's product. None of these allegations establish the parties engaged in a relationship of higher trust.

The cases the Defendants cite also do not help support their claim. Those cases involved relationships in which fiduciary duties would typically arise—the relationship between client and portfolio manager, or the relationships between company and company executives, and company and the attorneys representing it. *See Neogenix Oncology, Inc.* 133 F.Supp.3d 539 (E.D.N.Y. 2015); *Maillet v. Frontpoint Partners, L.L.C.*, No. 02 Civ. 7865(GBD), 2003 WL 21355218 (June 10, 2003); *Indep. Mgmt. LLC v. Zanger*, 538 F. Supp. 2d 704 (S.D.N.Y. 2008).

The Defendant accuses the Plaintiff of acting in bad faith. But the Defendants have not proffered factual material suggesting that the Plaintiff breached a duty owed to the Defendants beyond the obligations of the contract terms. *See Manufacturers Hanover Tr. Co. v. Yanakas*, 7 F.3d 310 (2d Cir. 1993); *EBC I, Inc.*, 5 N.Y.3d at 20. Accordingly, the Court finds that the Defendants have not pled facts alleging a relationship of higher trust with the Plaintiff or that the Plaintiff used this relationship higher trust to exercise power and control over the Defendants' product.

**B.** **Indiana Law**

Like New York, under Indiana law, "[c]ontractual agreements do not give rise to a fiduciary relationship creating a duty." *Morgan Asset Holding Corp. v. CoBank, ACB*, 736 N.E.

8

2d 1268, 1273 (Ind. Ct. App. 2000); *Wilson v. Lincoln Fed. Sav. Bank*, 790 N.E.2d 1042, 1046 (Ind. App. 2003) ("a business or 'arm's length' contractual relationship does not give rise to a fiduciary relationship"); *ArcAngelo, Inc. v. Directbuy, Inc.*, No. 3:14-CV-104, 2013 WL 6095678, at *10 (N.D. Ind. Nov. 20, 2013) ("Indiana cases repeatedly observe that ordinary business relationships based on arms-length contracts do not establish fiduciary relationships between the parties."). *Town of Goodland v. Kessler Tank Co.*, No. 4:13-CV-0082, 2014 WL 1319509, at *1–2 (N.D. Ind. April 1, 2014). But like New York, under Indiana law, a breach of contract and breach of fiduciary duty are two different claims; a contractual relationship does not preclude a fiduciary one. *See Town of Goodland v. Kessler Tank Co.*, No. 4:13-CV-0082, 2014 WL 1319509, at *1–2 (N.D. Ind. April 1, 2014) ("the existence of a fiduciary relationship depends upon the facts of each case, not on the label or classification") (citing *Demming v. Underwood*, 943 N.E.2d 878, 888 (Ind. Ct. App. 2012)).

Under Indiana law, "a claim for breach of fiduciary duty requires proof of three elements: (1) the existence of a fiduciary relationship; (2) a breach of that duty owed by the fiduciary to the beneficiary; and (3) harm to the beneficiary." *Rapkin Group, Inc. v. Cardinal Ventures, Inc.*, 29 N.E.3d 752 (Ind. Ct. App. 2015). Although a fiduciary relationship does not arise out of a contractual relationship, a fiduciary duty can arise out of a confidential relationship between the parties under "special circumstances." *Town of Goodland*, 2014 WL 1319509, at *1–2 ("The only relevant exception [to the general rule that a contractual relationship does not give rise to a fiduciary relationship] is when special circumstances establish a 'confidential relationship' between the parties.") (citing *Wilson v. Lincoln Fed. Sav. Bank*, 790 N.E.2d 1042, 1046–47 (Ind. Ct. App. 2003)).

Establishing a confidential relation requires three elements. First, the claimant must establish that there was "an unequal relationship between two parties, with one party in a position of dependence, weakness or lack of knowledge." *Id.* (citing *Kreighbaum v. First National Bank & Tr.*, 776 N.E.2d 413, 419 (Ind. Ct. App. 2002)). Second, the weaker party must have put its trust and confidence in the stronger party. *Id.* Third, "the stronger party [must have] wrongfully abused the weaker party's trust and confidence by improperly influencing the weaker party to gain an advantage." *Id.* (citing *Kreighbaum*, 776 N.E.2d at 419). In order to prove improper influence to gain an advantage, the plaintiff "has to plead facts showing [the tortfeasor] took advantage of [the claimant's] trust." *Id.* (citing *Kreighbaum*, 776 N.E.2d at 419).

The Defendants argue that they have established the elements of a confidential relationship with the Plaintiff. The Defendants argue that there is an unequal relationship between Beamalloy Reconstructive and the Plaintiff. They argue that "Plaintiff is a huge company, but Beamalloy is very small." (Pl.'s Resp. 11, ECF No. 18.) And that despite drafting a "detailed contract," the Plaintiff continued to insist on additional tests that were not part of the contract while at the same time secretly pursuing a competing product. (*Id.*)

The Defendants argue that the Plaintiff exercised great power and control over Beamalloy Reconstructive because it had relied on the Plaintiff to market its product under the Agreement. They argue that Beamalloy Reconstructive put its trust and confidence in the Plaintiff by believing the Plaintiff was using them as an exclusive supplier, when in fact, the Plaintiff was testing and working on a competing product internally. The Defendants also argue that the Plaintiff improperly influenced Beamalloy Reconstructive to gain an advantage by secretly pursuing a competing product.

But like New York law, under Indiana law, even when taking the Defendants' allegations as true, "there's just not enough here to establish a fiduciary relationship." *Town of Goodland*, 2014 WL 1319509, at *2. The Defendants' argument that the Plaintiff is much larger than the Defendants does not establish that the Plaintiff's and the Defendants' relationship was unequal. Even assuming the veracity of the Defendants' argument, the Defendants do not articulate the comparable sizes of the two companies in their pleadings. But regardless of size, the Defendants miss the point of this first element: an "unequal relationship between the parties, with *one party in a position of dependence, weakness, or lack of knowledge*." *Id.* (emphasis added). It is conceivable that size could be a contributing factor in establishing dependence, weakness, or lack of knowledge. But without more, it is certainly not dispositive.

The Defendants' next argument that Beamalloy Reconstructive was required to perform tests outside the contract does not establish that the Plaintiff exerted its power and control over the Defendants. Beamalloy Reconstructive was a sophisticated party to a sophisticated transaction, in which the primary agreement at issue here is over seventy pages long. If the Plaintiff breached the Agreement, or the related agreements between the parties, Beamalloy Reconstructive had remedies set forth in the contract available to it. The Defendants therefore have not plausibly set forth the element that the Plaintiff wrongfully abused Beamalloy Reconstructive's trust and confidence by improperly influencing it to gain an advantage.

Though the Defendants allege that Beamalloy Reconstructive put its trust and confidence in the Plaintiff, "[t]rust is not enough." *Town of Goodland*, 2014 WL 1319509, at *3. "[W]e trust most people with whom we do business." *Id.* (quoting *Pommier v. Peoples Bank Marycrest*, 967 F.2d 1115, 1117 (7th Cir. 1992)). To be sure, the Defendants allege that the Plaintiff engaged in

bad faith behavior. But this behavior does not, with the facts set forth by the Defendants, give rise to a fiduciary relationship.

The Court notes that the Defendants' reliance on *Town of Goodland* is unavailing, because, in that in that case, the district court found there was no fiduciary relationship established between the Town of Goodland and Kessler Tank Company, Inc., which was alleged to have performed substandard work on the town's water tower. *See Town of Goodland*, 2014 WL 1319509, at *1. That case had the same procedural disposition as the case here, in which the court there discussed at length why a fiduciary duty was not established between the two contracting entities. *Id.* at *2–3.

Accordingly, the Court finds that the Defendants have not pled sufficient factual matter to allege the existence of a confidential relationship between the parties under Indiana law.

**C.     Leave to Amend**

Lastly, the Plaintiff argues that Count Three should be dismissed with prejudice. But "[w]hen a complaint fails to state a claim for relief, the plaintiff should ordinarily be given an opportunity . . . to amend the complaint to correct the problem if possible." *Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013). Accordingly, the Court grants the Defendants an opportunity to amend their counterclaim consistent with this opinion.

**CONCLUSION**

For the foregoing reasons, the Court **GRANTS IN PART** Zimmer, Inc.'s Motion to Dismiss Count III of the Counterclaim [ECF No. 11] and **DISMISSES WITHOUT PREJUDICE** Count III of the Defendants' Counterclaim. The Court **DENIES IN PART** the

Motion in so far as dismissing Count III with prejudice and **GRANTS** the Defendants leave to file a second amended answer and counterclaim.

SO ORDERED on August 2, 2017.

s/ Theresa L. Springmann  
CHIEF JUDGE THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT