# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

| | |
|---|---|
| **ZIMMER, INC.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Cause No. 1:16-cv-00355-TLS-SLC** |
| | ) |
| **BEAMALLOY RECONSTRUCTIVE** | ) |
| **MEDICAL PRODUCTS, LLC,** *et al.*, | ) |
| | ) |
| **Defendants.** | ) |

## OPINION AND ORDER

This matter is before the Court on several motions regarding discovery disputes between

Plaintiff Zimmer, Inc. ("Zimmer"), Defendants Beamalloy Reconstructive Medical Products,

LLC, and Beamalloy Technologies, LLC (together "Beamalloy"), and third-party intervenor

Howmedica Osteonics Corp., a subsidiary of Stryker Corporation ("Howmedica"). As discussed

below, the Court will GRANT IN PART Zimmer's motion to compel (DE 61) and GRANT

Zimmer's motion to extend the deadline to complete discovery (DE 64). The Court will also

GRANT IN PART Howmedica's motion to intervene (DE 73)[1] and order the parties to submit an

amended proposed protective order.

## I. BACKGROUND

In the amended complaint, Zimmer alleges that Beamalloy breached the "License and

Supply Agreement," whereby Beamalloy granted Zimmer licenses to "research, develop, make,

have made, promote, use, market, sell, offer for sale, distribute, import/export and otherwise

commercialize" certain Beamalloy products, which were created using a titanium nitrite process

---

[1] On November 5, 2018, the Court granted Howmedica's motion to the extent that it requests to intervene in this case. (DE 75).

to coat the physical surfaces of the products.  (DE 5 ¶ 9).  This process is known as "ion beam enhanced deposition" or "IBED."  (DE 5 ¶ 9).  Zimmer alleges that before it could "launch" any device that had been coated using IBED, Beamalloy had to satisfy certain commercialization or validation milestones.  (DE 5 ¶ 10).  Zimmer claims that Beamalloy never satisfied these milestones and other provisions of the License and Supply Agreement, despite Zimmer paying for experts, analysis, and investing time and resources assisting Beamalloy.  (DE 5 ¶¶ 10-20).

Zimmer also leased certain equipment to Beamalloy to be used in the IBED process, and Beamalloy agreed to make payments for this equipment pursuant to two other contracts, the "Lease Agreement" and the "Security Agreement."  (DE 5 ¶¶ 20-24).  Zimmer claims that Beamalloy breached these agreements as well.  (DE 5 ¶¶ 20-24).  Zimmer is suing Beamalloy for breaching the agreements, a declaratory judgment (declaring that Zimmer has no further obligation to Beamalloy under the agreements), and replevin.  (DE 5 ¶¶ 25-44).

Steve White ("White") is Beamalloy's current Chief Executive Officer.  Bruce Lazear ("Lazear") is a "lead investor" of Beamalloy and owns the consulting firm Lazear Capital.  In Beamalloy's responses to Zimmer's requests for responses to interrogatories, Beamalloy identified White and Lazear as individuals with knowledge relevant to this case.  (DE 62-2).

On June 30, 2017, Zimmer informed Beamalloy of alleged deficiencies in its responses to discovery requests related to White, Lazear, and the testing of products coated using the IBED process.  (DE 62-4 at 2, 3).  Over a year later, on July 12, 2018, Zimmer had not heard back from Beamalloy and raised these issues again.  (DE 62-4 at 8).

On July 12, 2018, Zimmer emailed Beamalloy to resolve the issue.  (DE 62-4 at 8-10). On July 19, 2018, Beamalloy responded that it had produced all "responsive non-privileged documents between Steve White, Lazear, Bob Borel [Beamalloy's president and former CEO],

and Beamalloy that [were] in Beamalloy's possession, custody, and control." (DE 62-5; *see also* DE 62-7; DE 62-8; DE 62-9).

On August 12, 2018, two days before Borel's deposition, Zimmer emailed Beamalloy regarding a sizeable gap in the bates numbers of a recent Beamalloy production of documents. (DE 62-11). Beamalloy could not explain the gap. (DE 62-11).

On August 14, 2018, during Borel's deposition, Beamalloy learned and relayed to Zimmer that the gap in bates numbers was due to Beamalloy's failure to produce two full productions of documents (one production contained 1,088 documents, and the other contained 1,575 documents). (DE 62-12). Zimmer was supposed to receive both productions a year earlier. (DE 62-12). Also, during Borel's deposition, Beamalloy's counsel instructed Borel not to answer questions about Beamalloy's use, testing, and discussions with third parties related to the IBED process or equipment. (DE 62-12). Beamalloy's outside counsel claimed that such information was protected under a "proprietary privilege." (DE 62-12). The parties agreed to continue Borel's and other depositions and extend the discovery deadlines. (DE 62-12).

After receiving and reviewing Beamalloy's two belated productions, Zimmer continued to allege that Beamalloy had not satisfied its discovery obligations. (DE 62-13).

During a status conference with the Court on August 21, 2018, Beamalloy revealed that it had not collected documents from Lazear's business email account—that is, his Lazear Capital email account—or from White's personal "America Online" or "AOL" email account. (DE 60; *see also* DE 62-14). Beamalloy had produced documents showing that both men used these email accounts to conduct business relevant to the parties' claims. (*See* DE 62-14 at 3; DE 63). However, Beamalloy objected to collecting or producing documents from either email account. (DE 62-14 at 4; DE 62-15). Beamalloy also defended its instruction for Borel to not answer

certain questions at deposition, claiming that the questions sought information that was "proprietary" and "privileged."  (*See* DE 60; DE 62-15 at 3).

On August 30, 2018, Beamalloy produced its first privilege log to Zimmer.  (DE 82 at 3; DE 82-1).  Beamalloy withheld 35 documents from production based on a claim of "proprietary privilege."  (DE 82-1).  Zimmer responded that Beamalloy must produce the 35 documents because no proprietary privilege exists.  (DE 62-16).  Zimmer also maintained that it was entitled to discovery of Beamalloy's research and tests of products using the IBED process and Lazear's and White's email accounts.  (DE 62-16).

On September 18, 2018, Zimmer filed the instant motion to compel.  (DE 61).  In the motion, Zimmer seeks to compel the production of:  (1) relevant documents contained in White's AOL account and Lazear's business account ("Email Discovery"); (2) documents (and responses to questions at deposition) regarding Beamalloy's use of IBED related technology, testing and research IBED coated products, or interactions with other manufacturers regarding the IBED process ("Equipment/IBED Discovery"); and (3) the 35 documents Beamalloy withheld on the basis of a "proprietary privilege" ("Privilege Log Discovery").

On November 2, 2018, Howmedica filed an emergency motion seeking to intervene in this matter.  (DE 73).  Howmedica seeks to protect sensitive business information it revealed to or discussed with Beamalloy, which will be produced should the Court grant Zimmer's motion to compel.  (DE 73).  To do so, Howmedica moves for an amended protective order that restricts or prohibits Zimmer's access to Howmedica's sensitive business information.

Zimmer and Beamalloy filed responses to Howmedica's motion (DE 82; DE 84), and Howmedica filed a reply (DE 88).  Beamalloy responded to Zimmer's arguments (two days before a hearing on Zimmer's motion to compel and Howmedica's motion to intervene) by

changing its privilege claim over the 35 documents in its privilege log from "propriety" to "work product." (DE 84-3; *compare* DE 82-2, *with* DE 91).[2]

On November 16, 2018, the Court heard oral argument on Zimmer's motion to compel and Howmedica's motion to intervene. (DE 92). Zimmer made an oral motion for Beamalloy to submit the 35 documents in its privilege log for an *in camera* review. Howmedica and Zimmer agreed that Zimmer's motion to compel would result in the production of documents containing Howmedica's sensitive business information and that the Court should enter an amended protective order. However, Zimmer and Howmedica disagreed as to the nature of the protection that the order should afford. At the conclusion of the hearing, for the reasons stated on the record, the Court stayed all discovery deadlines until the resolution of Zimmer's motion to compel and ordered Beamalloy to submit the 35 purportedly privileged documents for an *in camera* review by the Court to determine whether they were actually protected. (DE 93).

On November 30, 2018, Beamalloy submitted 22 documents for an *in camera* review. (DE 94-DE 115). Beamalloy did not submit 13 of the documents it was ordered to because, prior to its *in camera* submissions, Beamalloy determined that 13 of the 35 documents were "benign"—that is, not privileged—and turned them over to Zimmer. (DE 93). Zimmer responded to Beamalloy's *in camera* submission by requesting that the Court order Beamalloy to pay the attorney's fees and costs that Zimmer incurred in litigating the production of the 13 "benign" documents. (DE 116; DE 117; DE 121).

The Court reviewed Beamalloy's privilege log and the documents submitted *in camera*,

<hr>

[2] However, the privilege log that Beamalloy attached in support of this assertion did not include the documents that Beamalloy had previously designated as protected by a proprietary privilege. (*Compare* DE 82-2, *with* DE 87). Zimmer took issue with this apparent inconsistency and demanded that Beamalloy file a privilege log listing the 35 documents allegedly protected by a proprietary privilege. Thus, on the evening of November 15, 2018 (the day before oral argument on Zimmer's motion to compel), Beamalloy, without requesting leave of Court, filed an amended privilege log to replace the privilege log it originally submitted in support of its response to Howmedica's motion. (*See generally* DE 87).

but on the record provided, the Court could not determine whether the documents were privileged. (DE 122). So, on January 15, 2019, the Court advised Beamalloy that its privilege log fell short of establishing that the 22 documents were privileged. (DE 122). The Court then ordered Beamalloy to submit affidavits, declarations, deposition transcripts, or other evidence supporting its claim of work product protection for each of the 22 documents. (DE 122).

On January 29, 2019, pursuant to the Court's Order of January 15, 2019, Beamalloy submitted the affidavit of its in-house counsel, Attorney Sherri Lazear, along with 19 exhibits attesting to the privileged nature of the 22 documents. (DE 123; DE 126).

## II. MOTION TO COMPEL

### A. Legal Standard

Under Federal Rule of Civil Procedure 26(b)(1):

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

A party may file a motion to compel under Rule 37 when the responding party is evasive or provides incomplete disclosures or answers. Fed. R. Civ. P. 37(a)(1).

Generally, in a motion to compel, the moving party bears the burden of proving that the discovery it is seeking is relevant to the case. *See United States v. Lake Cty. Bd. of Comm'rs*, No. 2:04 CV 415, 2006 WL 978882, at *1 (N.D. Ind. Apr. 7, 2006) (citations omitted). Relevance for purposes of discovery is construed broadly as "any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Chavez v. Daimler Chrysler Corp.*, 206 F.R.D. 615, 619 (S.D. Ind. 2002). Moreover there "is a

strong public policy in favor of disclosure of relevant materials, . . . ." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002) (citing Fed. R. Civ. P. 26(b)(2)). "The party opposing discovery has the burden of proving that the requested discovery should be disallowed." *Bd. of Trs. of the Univ. of Illinois v. Micron Tech., Inc.*, No. 211CV02288SLDJEH, 2016 WL 4132182, at *3 (C.D. Ill. Aug. 3, 2016) (collecting cases).

In ruling on a motion to compel, the Court weighs the relevance of the discovery subject to the motion and whether ordering production would cause undue burden to the opposing party. *See, e.g.*, *Nucap Indus. Inc. v. Robert Bosch LLC*, No. 15 CV 2207, 2017 WL 6059770, at *2 (N.D. Ill. Dec. 7, 2017) (citing *Patterson*, 281 F.3d at 681); *Berning v. UAW Local 2009*, 242 F.R.D. 510, 514 (N.D. Ind. 2007).

### B. Analysis

#### 1. Email Discovery

Zimmer asserts that the content of White's and Lazear's email accounts is discoverable the following reasons: (1) Beamalloy identified White and Lazear as persons with relevant information in its discovery responses and designated them as Rule 30(b)(6) witnesses; (2) Beamalloy has not searched the email accounts using a TAR protocol[3]; and (3) Beamalloy has produced documents and emails indicating that White and Lazear used their personal email accounts to conduct business on issues relevant to this lawsuit.

Beamalloy responds that it has already produced all relevant emails in the two email accounts or that Zimmer already has the emails (because the emails requested involve communications with Zimmer). Additionally, Beamalloy has stated that White and Lazear

---

[3] "TAR" refers to technology assisted review. On December 11, 2017, after Beamalloy and Zimmer filed motions to compel or for a protective order concerning use of a certain TAR protocol, the Court held that neither Beamalloy nor Zimmer could force the other to use a particular TAR protocol in collecting electronically stored information for discovery purposes. (DE 47; DE 48).

searched their email accounts and provided Beamalloy with any relevant documents they found. Beamalloy claims that it would suffer undue burden in collecting and producing any additional emails. According to Beamalloy, White's AOL account contains approximately 60,000 emails and Lazear's business account contains approximately 80,000 emails. Beamalloy claims that to produce these emails it would have to go through and read each one for privilege and relevance.

Zimmer's arguments are persuasive. First, Beamalloy appears to argue that in a dispute between corporations, the contents of a witness's personal or non-corporate email account are not discoverable solely because a party-corporation does not own the email account's domain. Beamalloy does not support this argument with any authority. In stark contrast, case law appears to support Zimmer's position: If Lazear's and White's email accounts contain information that is relevant or likely to lead to relevant information, then Zimmer is entitled to the Email Discovery. *See Co. v. Glob. Bio-Fuels Tech.*, *LLC*, No. 112CV1292DNHDJS, 2016 WL 6605070, at *4 (N.D.N.Y. May 20, 2016) ("The Court agrees with Plaintiff's position in this regard and directs that Defendant Behnke assist the Plaintiff's expert to review the status of the disputed email accounts, and to gain access to those accounts if that is possible."); *BCS Int'l, Inc. v. Heiting*, No. 09-C-1003, 2011 WL 13216979, at *5 (E.D. Wis. Mar. 24, 2011) (authorizing access to a defendant's non-corporate, web-based email accounts because there was evidence establishing that such discovery was likely to contain or lead to the discovery of relevant evidence). Evidence of record indicates that the email accounts contain relevant discovery. (*See, e.g.*, DE 63; DE 114).

Second, Beamalloy fails to provide any evidence that Lazear and White went through their respective email accounts and turned over every relevant email. The Court requires more than Beamalloy's "bald assertion" that it fulfilled its discovery obligations. *King v. McCarty*,

No. 11-CV-1126, 2012 WL 12929749, at *3 (C.D. Ill. May 1, 2012) ("Defendants offer nothing except the bald assertion that they did produce this list to contradict this document."). In any event, Beamalloy has not explained why it relied on Lazear and White to cull documents from their email accounts instead of using a TAR protocol.

Third, Beamalloy has not demonstrated that it will suffer an undue burden in producing the Email Discovery. Beamalloy has not estimated the expenses or resources to request and produce the Email Discovery, but merely states, without any evidentiary support, that the two accounts contain a combined 140,000 emails. *See, e.g.*, *id.* And while Beamalloy's counsel represents that counsel must read every email for relevance and privilege, the Court is confident that counsel can avoid such a task by using a TAR protocol of the type litigated by the parties in December 2017. (*See generally* DE 47; DE 48). Beamalloy has failed to show that the cost of producing the Email Discovery outweighs its relevance. *See, e.g.*, *Bd. of Trs. of the Univ. of Illinois*, 2016 WL 4132182, at *3 (collecting cases).

### 2. Equipment/IBED Discovery

#### a. Beamalloy's Objections[4]

Beamalloy asserts that the Equipment/IBED Discovery (both documents and the responses to questions at deposition) concerns events that took place after October 4, 2016 (the day the parties terminated the agreements at issue in this case), and therefore, it is irrelevant. Beamalloy also argues that the Equipment/IBED Discovery is irrelevant to the parties' claims and defense; rather, it relates to potential violations of the parties' confidentiality agreement,

---

[4] In Beamalloy's response to Howmedica's motion, Beamalloy belatedly parrots Howmedica's arguments. (DE 84 at 3-4). Beamalloy likely waived these arguments by not asserting them in its response to Zimmer's motion to compel. *See, e.g.*, *Larkin-Gordon v. Ortho-McNeil-Janssen Pharm., Inc.*, 295 F. App'x 817, 818 (7th Cir. 2008) (citation omitted). However, even if Beamalloy did not waive these arguments, they are not persuasive as discussed *infra*.

codified in Article 9 of the License and Supply Agreement (Zimmer has not asserted a claim for breach of the confidentiality agreement).

Zimmer responds that it is entitled to the Equipment/IBED Discovery because it relates to Beamalloy's efforts to:

> (a) mitigate its damages,
> (b) sell, describe, and/or explain its IBED coating to other orthopedic-device manufacturers,
> (c) discuss its work with Zimmer with other orthopedic-device manufacturers,
> (d) discuss, contemplate, or conduct any additional testing of its IBED coating with other orthopedic-device manufacturers,
> (e) show, explain, or describe the equipment that Zimmer owns to other orthopedic-device manufacturers, and/or
> (f) disclose confidential information about the parties' business relationships[, which are] relevant to the parties' claims and defenses.

(DE 62 at 20; DE 62-14 at 4). Zimmer asserts that these topics are relevant to various claims and defenses raised by both parties. Zimmer also contends that even if this information is irrelevant, Beamalloy's instruction at deposition not to answer questions related to the Equipment/IBED Discovery was inappropriate.

First, Beamalloy has failed to justify its instruction to witnesses at deposition to not answer questions regarding the Equipment/IBED Discovery. Rule 30 provides that "[a] person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." Fed. R. Civ. P. 30(c)(2). At deposition, Beamalloy instructed witnesses not to answer questions related to the Equipment/IBED Discovery on the basis of a proprietary privilege. As discussed, *infra* note 9, this Court does not recognize such a privilege. In its briefs, Beamalloy merely argues that answering these questions would harm its business interest. While Beamalloy's concerns may warrant modifying the protective order, they fail to justify its instructions to witnesses to not

answer questions at deposition.  *See* Fed. R. Civ. P. 30(c)(2).

Second, with respect to documents, the Equipment/IBED Discovery is at least calculated to lead to relevant evidence.  Again, the rules of discovery are to be construed liberally to assist the parties in preparation for trial and settlement.  *See Bond v. Utreras*, 585 F.3d 1061, 1075 (7th Cir. 2009) (citations omitted); *1221122 Ontario Ltd. v. TCP Water Sols., Inc.*, No. 10 C 4942, 2011 WL 2516531, at *2 (N.D. Ill. June 23, 2011) (citations omitted).  In their pleadings, the parties dispute whether under the License and Supply Agreement required Beamalloy to produce IBED-coated products that passed certain "scratch adhesion/cohesion tests," and whether the products actually passed those tests.  (DE 5 at 4; DE 15 at 11-12, 17-25; DE 34 at 7, 11). Zimmer is entitled to discovery on this issue, including Beamalloy's discussions, both internal and with third parties, about testing IBED-coated products.

Third, to the extent that the Equipment/IBED Discovery relates to potential violations of Article 9 of the License and Supply Agreement (the confidentiality agreement), it is true that Zimmer does not claim Beamalloy breached its confidentiality obligations.  However, Beamalloy admits that even though the License and Supply Agreement was terminated, Beamalloy continues to owe an obligation to Zimmer with respect to confidentiality under Article 9 of the License and Supply Agreement.  (DE 15 at 12).  Zimmer is entitled to discovery on whether Beamalloy violated Article 9 of the License and Supply Agreement as it relates to "confidential information about the parties' business relationships[, which are] relevant to the parties' claims and defenses."  (DE 62 at 20).

Fourth, Zimmer is correct that Beamalloy's use of the equipment that Zimmer leased to Beamalloy could be relevant to the parties' claims and defenses in the case.  Specifically, Beamalloy's efforts to profit from the equipment may lead to relevant discovery on whether

11

Beamalloy "mitigate[d] any damages it alleges it has incurred." (DE 34 at 12).

Finally, Beamalloy has not estimated the time or cost required to produce the Equipment/IBED Discovery documents, and thus, has not demonstrated that it would suffer undue burden. Conversely, Zimmer has demonstrated that the Equipment/IBED Discovery is at least calculated to lead to relevant evidence. Accordingly, the Court will grant Zimmer's motion to compel with respect to the Equipment/IBED Discovery.

### b. Howmedica's Objections

Howmedica argues that the Court should modify the protective order in this case to prohibit the production of documents or answer questions at deposition that reveal Howmedica's sensitive business information.

According to Rule 37(a)(3)(B), a motion to compel may be granted if a party "fails to produce documents . . . as requested under Rule 34," which governs requests for production of documents. Howmedica argues that Zimmer did not request the Equipment/IBED Discovery in its Rule 34 requests for production of documents and, therefore, Zimmer may not obtain this material through a motion to compel.

Zimmer argues that it did seek the Equipment/IBED Discovery in its discovery requests. Specifically, in its first request for production of documents, Zimmer propounded the following on Beamalloy:

> **Request No. 3.** All Documents or Communications concerning, regarding, or relating to Zimmer.

> **Request No. 4.** All Documents and Communications concerning, regarding, or relating to any claim, defense, response, or other allegations raised in the Lawsuit (including in the Complaint, Answer, or Counterclaim).

> . . . .

12

**Request No. 8.** All Documents and Communications concerning, regarding, or relating to the IBED Process.

. . . .

**Request No. 10.** All Documents and Communications concerning, regarding, or relating to any "additional testing" that you recommended or proposed as you allege in paragraph 11 of your Counterclaim.

. . . .

**Request No. 14.** All Documents and Communications that refer or relate to, support, or contradict the following allegations in your Counterclaim: (a) that you have complied with the Zimmer Engineering Specification (Counterclaim, ¸i 7); (b) that "[t]he chosen test methodology for the [T]hird [B]ody [W]ear [T]est was not clinically relevant" (Counterclaim, ¸i 8); and (c) that you have complied with the Third Body Wear Tests (Counterclaim, ¸i 10).

(DE 62-2 at 19, 21, 22-23 (final four alterations in original)).

The Court is satisfied that these broad discovery requests include the specific information that Zimmer now seeks in its motion to compel. For example, Beamalloy's communications with Howmedica regarding testing the IBED process is responsive to Zimmer's request for documents concerning communications about any additional testing that Beamalloy recommended or proposed (Request No. 10), or communications relating to Zimmer (Request No. 3). Similarly, Beamalloy's communications regarding Third Body Wear Tests, potential clinical relevance of Third Party Wear Tests, or how IBED-coated products performed in Third Body Wear Tests (Request No. 14), would include Beamalloy's discussions of "any additional testing of its IBED coating with other orthopedic-device manufacturers." (DE 62 at 20).

Howmedica appears to take issue with the specificity of Zimmer's discovery requests—that is, Zimmer should not be able to obtain specific documents from broad discovery requests. In effect, Howmedica asks the Court to restrict relevance, as it relates to discovery, as to

13

contravene the principle that discovery should be construed broadly and underlying public policy that favors disclosure of relevant material. *See Patterson*, 281 F.3d at 681; *Chavez*, 206 F.R.D. at 619. The Court will not construe relevance so narrowly. Thus, the Court will deny Howmedica's motion insofar as it seeks to bar the production of the Equipment/IBED Discovery.

### 3. Privilege Log Discovery

The work product doctrine protects the "mental impressions, conclusions, opinions or legal theories" prepared by or for an attorney in anticipation of litigation. *Baxter Travenol Labs., Inc. v. Abbott Labs*., No. 84 C 5103, 1987 WL 12919, at *10 (N.D. Ill. June 19, 1987). "To be protected under the work-product doctrine, the primary motivating purpose behind the creation of the document or investigative report must be to aid in possible future litigation." *Indianapolis Airport Auth. v. Travelers Prop. Cas. Co. of Am*., No. 1:13-CV-01316-JMS, 2015 WL 4715202, at *8 (S.D. Ind. Aug. 7, 2015). "The mere fact that litigation does eventually ensue does not, by itself, cloak materials prepared by an attorney with the protection of the work product privilege; the privilege is not that broad." *Binks Mfg. Co. v. Nat'l Presto Indus., Inc*., 709 F.2d 1109, 1118 (7th Cir. 1983). "Rather, we look to whether in light of the factual context 'the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'" *Logan v. Commercial Union Ins. Co*., 96 F.3d 971, 976-77 (7th Cir. 1996) (quoting *Binks*, 709 F.2d at 1118). It is not enough that material was prepared with an eye toward a possible legal dispute over a claim; rather the primary motivating purpose for creating the material must be to aid in future litigation. *See Binks*, 709 F.2d at 118-19; *Finnegan v. Myers*, No. 3:08-CV-503-RL-CAN, 2014 WL 12789809, at *5 (N.D. Ind. Feb. 18, 2014); *Keaton v. Hannum*, No. 1:12-CV-00641-SEB, 2013 WL 1818993, at *6 (S.D. Ind. Apr. 29, 2013).

*a. Attorney Sherri Lazear's Affidavit*[5]

Pursuant to the Court's Order of January 22, 2019, Beamalloy submitted an affidavit of

its in-house counsel, Attorney Sherri Lazear, and several exhibits discussing Beamalloy's

reasons for designating 22 documents as protected work product.  (DE 123; DE 126).

The purpose of Attorney Sherri Lazear's affidavit and its attached exhibits is to provide

support for Beamalloy's claim of work product protection beyond what was in Beamalloy's

privilege log or the documents themselves.  In fact, the Court specifically stated that Beamalloy

could no longer rest on its privilege log, and ordered Beamalloy to submit the following:

> [T]he date, the author and all recipients, along with their
> capacities, the subject matter of the document, the purpose for its
> production and a specific explanation of why the document is
> privileged."  *Muro v. Target Corp.*, No. 04 C 6267, 2006 WL
> 3422181, at *2 (N.D. Ill. Nov. 28, 2006) (citation omitted).  This
> information should provide sufficient detail to allow the Court to
> determine whether the privilege or protection applies.  *Id.*

(DE 122 at 3).  With respect to each of the 22 documents, Attorney Sherri Lazear fails to provide

the names of all recipients, along with their capacities, and a specific explanation of why the

document is protected.  However, Attorney Sherri Lazear does represent that Beamalloy began to

anticipate litigation with Zimmer in January 2016.

Attorney Sherri Lazear also states that each document embodies research and

development, negotiating strategies, product initiatives, test results, operational strategy, or

developmental strategy, and that these enterprises or initiatives informed Beamalloy's "legal

---

[5] Zimmer submitted a response to Attorney Sherri Lazear's affidavit, arguing that the Court should strike the affidavit because Attorney Sherri Lazear:  (1) submits argument on the merits of the parties' claims and defenses, which is outside the scope of the information the Court requested; (2) testifies to facts outside of her personal knowledge; and (3) cannot act both as a fact witness and a legal advocate for Beamalloy.  (DE 125). Zimmer is likely correct that Attorney Sherri Lazear gave testimony regarding events outside of her personal knowledge, and that her testimony exceeds the scope of what Beamalloy was ordered to submit.  That being said, the Court would be persuaded that 20 of the 22 documents are not privileged regardless of whether Attorney Sherri Lazear's affidavit was stricken (in part or in its entirety).  Therefore, Zimmer's request to strike Attorney Sherri Lazear's affidavit is denied without prejudice.

theory" or "legal strategy" in litigating this suit.  (*See* DE 126 at 8).  However, Attorney Sherri Lazear never connects the substance of the documents—that is, the strategy, enterprise, or initiative the document discusses—to a claim, defense, or legally relevant issue in this case.  "It may be overstating the obvious, but . . . describing a document as 'legal advice' or 'work product' is not the same as establishing that the documents are immune from discovery."  *Coltec Indus., Inc. v. Am. Motorists Ins*. Co., 197 F.R.D. 368, 373 (N.D. Ill. 2000).

Overall, Attorney Sherri Lazear's affidavit does little more than provide a narrative of Beamalloy's version of events that precipitated this lawsuit and parrot the privilege log, which the Court has already found deficient.  *Cf. Valley Forge Ins. Co. v. Hartford Iron & Metal, Inc*., No. 114CV00006RLMSLC, 2017 WL 1361308, at *8 (N.D. Ind. Apr. 14, 2017) (noting that the party claiming work product protection bears the burden of establishing that the protection applies (citation omitted)).  Nevertheless, because Beamalloy provided an explanation as to each document or category of documents, the Court will evaluate each document or category of documents in turn.

### b. The Documents

**BEAM001110, BEAM001111, and BEAM001112**.  These three documents are in fact three different pages of the same document and will be discussed as a single document.  Attorney Sherri Lazear represents that this document contains "product research and development performed by [Engineer] Arnold Deutchman," on or around September 28, 2016 (DE 126 at 8), well after Beamalloy began to anticipate litigation with Zimmer.  Thus, the work product doctrine may protect this document.

 Having said that, the fact that the document was created after January 2016 is not determinative because the work product doctrine requires that the document be created *because*

*of* litigation. *Coltec Indus.*, 197 F.R.D. at 371 ("Accordingly, even if litigation is imminent, there is no work product immunity for documents prepared in the ordinary course of business rather than for litigation purposes."). To that end, Attorney Sherri Lazear states that the research and development discussed in this document was performed "after legal meetings and discussions to help [Attorney Sherri Lazear] develop [Beamalloy's] legal strategy in anticipation of litigation." (DE 126 at 8).

Unfortunately, the Court is left to guess why the research contained in the document is relevant to this litigation. *Coltec Indus.*, 197 F.R.D. at 373 (N.D. Ill. 2000). There is no evidence in the document itself or Attorney Sherri Lazear's affidavit that an attorney participated in the document's creation or that it informed Beamalloy's legal strategy in this case. *Id.*

Because the Court is not convinced that the "primary motivating purpose behind the creation of a document was to aid in possible future litigation," *Keaton*, 2013 WL 1818993, at *6 (citation and internal quotation marks omitted), Beamalloy will be ordered to produce BEAM001110, BEAM001111, and BEAM001112.

**BEAM002016, BEAM017996, BEAM018000, BEAM018001, BEAM018011, BEAM121787, BEAM093827, BEAM093829, BEAM094741, and BEAM095125**. These 10 documents are iterations of a spreadsheet created by White and updated approximately five times between May 2016 and August 2016. Attorney Sherri Lazear states that these documents were created following "legal meetings and discussions to develop a legal strategy" against Zimmer, and that the documents contain "Beamalloy initiatives to counteract Zimmer's legal strategy including: operational strategy, intellectual property strategy, [Research and Development] strategy, and communication strategy with Zimmer. [These documents] also contain[] information on patent litigation." (DE 126 at 8-10).

While Attorney Sheri Lazear and Beamalloy attempt to bring these different initiatives under the protection of "a legal strategy in anticipation of litigation with Zimmer" (*e.g.*, DE 126 at 8), the fact is that these initiatives appear to "serve a primary purpose other than to aid in future litigation," *Indianapolis Airport Auth.*, 2015 WL 4715202, at *9. These spreadsheets appear to summarize transmittal or administrative communications, which are not afforded work product protection. *See Valley Forge Ins.*, 2017 WL 1361308, at *11 (collecting cases).

Beamalloy has failed "to provide a clear description of the connection between the documents and impending litigation." *Finnegan*, 2014 WL 12789809, at *5. Attorney Sherri Lazear's affidavit is "not enough for the Court to determine whether the requested documents constitute work product worthy of protection." *Id.* Consequently, the Court will order Beamalloy to produce BEAM002016, BEAM017996, BEAM018000, BEAM018001, BEAM018011, BEAM121787, BEAM093827, BEAM093829, BEAM094741, and BEAM095125.

**BEAM016953, BEAM121872, BEAM121873, BEAM121881, BEAM122146, BEAM046471, and BEAM071634.** At the outset, Attorney Sherri Lazear acknowledges that BEAM016953, BEAM046471, and BEAM071634 were created before Beamalloy anticipated litigation with Zimmer—that is, in January 2016. Consequently, they cannot be protected by the work product doctrine insofar as it would apply to material prepared in anticipation of this case. Beamalloy appears to assert that these documents were prepared in anticipation of a different litigation. However, as discussed below, Beamalloy fails to support that claim.

Beamalloy contends that these seven documents are protected because they discuss or relate to "patent claims." A patent claim is "[a] formal statement describing the novel features of an invention and defining the scope of the patent's protection." BLACK'S LAW DICTIONARY

(10th ed. 2014).  A patent application, which contains a patent claim, is subjected to an *ex parte* process with the United States Patent and Trademark Office, termed "patent prosecution."  *See* United States Patent and Trademark Office, *General information concerning patents*, https://www.uspto.gov/patents-getting-started/general-information-concerning-patents#heading-17 (last updated October 2015) ("The portion of the application in which the applicant sets forth the claim or claims is an important part of the application, as it is the claims that define the scope of the protection afforded by the patent and which questions of infringement are judged by the courts."); *see also* BLACK'S LAW DICTIONARY (10th ed. 2014) ("Prosecution . . .  4. Patents.  The process of applying for and pursuing a patent through the U.S. Patent and Trademark Office and negotiating with the patent examiner. — Also termed patent-prosecution process.").

"Documents prepared in anticipation of *ex parte* patent proceedings are protected if the attorney's primary concern is with claims that may arise in future litigation, but not if [her] primary concern is with issues arising in the prosecution of the patent."  *Baxter Travenol Labs., Inc.*, 1987 WL 12919, at *10; *see McCook Metals L.L.C. v. Alcoa Inc.*, 192 F.R.D. 242, 261 (N.D. Ill. 2000) ("These are documents prepared for the patent application that include such things as technical information, sketches, drawings, graphs, and test results that cannot be said to be prepared in anticipation of this litigation." (citation omitted)).

Attorney Sherri Lazear states that "[p]atent applications are often the subject of contested administrative legal proceedings and require the assistance of an attorney to provide legal strategy, legal advice and advocacy."  (DE 126 at 1).  Attorney Sherri Lazear refers to this type of patent work as a "patent litigation" or a "patent dispute" in her affidavit, and Beamalloy does the same in its privilege log.  (DE 126 at 1).  Attorney Sherri Lazear asserts that these seven documents are protected because they were prepared in anticipation of "patent litigation," as she

uses the term in her affidavit.  (*See* DE 126 at 8-11).

The obvious problem is that Attorney Sherri Lazear's use of "patent litigation" does not refer to actual litigation.  At best, Attorney Sherri Lazear conflates "patent litigation" with the process of "patent prosecution."  Furthermore, it is not enough that patent claims and applications are often the subject of litigation.  *Logan*, 96 F.3d at 977 (finding that document "prepared with an eye toward a possible legal dispute over a claim" are not afforded work product protection (citation omitted)).  Finally, neither the documents nor evidence of record indicates that Beamalloy created these documents in anticipation of a different litigation.  *See Indianapolis Airport Auth.*, 2015 WL 4715202, at *8.  Consequently, the Court will order Beamalloy to produce BEAM016953, BEAM121872, BEAM121873, BEAM121881, BEAM122146, BEAM046471, and BEAM071634.

**BEAM017998 and BEAM083879.**  These documents are marked as privileged and prepared at the request of counsel.  They appear to contain Beamalloy's legal impressions regarding the agreements at issue in this case.[6]  The Court is satisfied that these two documents were created in anticipation of litigation, and thus, are protected by the work product doctrine.[7]

### III.  ATTORNEY'S FEES AND COSTS

#### A.  Standard

Rule 37 presumptively requires the loser "to make good the victor's costs."  *Rackemann*

---

[6] These two documents appear to contain "opinion" work product, which renders them immune from discovery, as opposed to "fact" work product, which would render them discoverable if Zimmer demonstrated "substantial need."  *Appleton Papers, Inc. v. E.P.A.*, 702 F.3d 1018, 1023 (7th Cir. 2012) (citing Fed. R. Civ. P. 26(b)(3)(A)).  In any event, Zimmer has not argued that it has a "substantial need" for these documents, and thus, the Court need not analyze whether the they constitute opinion or fact work product.

[7] Having concluded that Beamalloy must produce all but two of the documents subject to Zimmer's motion to compel, the Court will not reach Zimmer's argument that Beamalloy waived objections to producing documents subject to its motion to compel.

*v. LISNR, Inc*., No. 117CV00624MJDTWP, 2018 WL 3328140, at *2 (S.D. Ind. July 6, 2018)

(citation and internal quotation marks omitted); *see Rickels v. City of S. Bend, Ind*., 33 F.3d 785,

786 (7th Cir. 1994).  "[A] court must . . . require the party or deponent whose conduct

necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the

motion, including attorney's fees."  Fed. R. Civ. P. 37(a)(5)(A).  The Court will not order the

payment of fees if "(i) the movant filed the motion before attempting in good faith to obtain the

disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or

objection was substantially justified; or (iii) other circumstances make an award of expenses

unjust."  Fed. R. Civ. P. 37(a)(5)(A)(i)-(iii); *Steadfast Ins. Co. v. Auto Mktg. Network, Inc*., No.

97 C 5696, 1999 WL 446691, at *1 (N.D. Ill. June 23, 1999).

 "The burden of persuasion is on the losing party to avoid assessment of expenses and

fees, rather than on the winning party to obtain such an award."  *Lincoln Diagnostics, Inc. v.

Panatrex, Inc*., No. 07-CV-2077, 2008 WL 4330182, at *3 (C.D. Ill. Sept. 16, 2008) (citation and

internal quotation marks omitted).

### B. Analysis

#### 1. Additional Briefing

Beamalloy has not had an opportunity to address whether one of the exceptions provided

in Federal Rule 37(a)(5)(A) applies to costs and fees incurred in litigating the production of the

Equipment/IBED Discovery or the Email Discovery.  Thus, Zimmer and Beamalloy will be

granted leave to submit additional briefing regarding whether Beamalloy should be obligated to

pay reasonable attorney's fees and costs with respect to the Equipment/IBED Discovery and the

Email Discovery.

2. <u>Privilege Log Discovery</u>[8]

Beamalloy argues that Zimmer did not meet and confer regarding the Privilege Log Discovery, as required to recover fees and costs under Rule 37(a)(5)(A)(i). However, Zimmer submitted evidence demonstrating its attempts to resolve disputes regarding the Privilege Log Discovery without court intervention. (*See* DE 62-14 at 3; DE 62-16; DE 121-2). For example, Zimmer objected to Beamalloy's use of a purported proprietary privilege at Borel's deposition and in letters between the parties after the deposition. Then, the Court held a status conference on August 21, 2018, at which Beamalloy claimed that some of Zimmer's questions to Borel at deposition were "privileged" because they were "proprietary" and Zimmer objected. After Beamalloy provided its privilege log to Zimmer, Zimmer sent a letter to Beamalloy specifically asserting that Beamalloy may not withhold documents on the basis of a proprietary privilege. (DE 62-18). Therefore, the Court finds that Zimmer attempted to resolve this dispute without Court action prior to filing its motion to compel, as required under Rule 37(a)(5)(A)(i).

Furthermore, neither of the other two exceptions under Rule 37(a)(5)(A) apply to the Privilege Log Discovery. Beamalloy's professed belief that 20 of the 22 documents are protected is dubious, at best. *Rackemann*, 2018 WL 3328140, at *4. Beamalloy twice avoided justifying its claim of privilege to the Court by changing the privileged status of all or some of the documents in its privilege log. The Court researched Beamalloy's claim of a "proprietary privilege" prior to the oral argument on Zimmer's motion to compel. Although a thorough

---

[8] Beamalloy has not submitted argument specifically addressing whether one of the exceptions in Rule 37(a)(5)(A) is applicable with respect to the 22 documents contained in the Privilege Log Discovery. However, the Court has entertained substantial evidence and argument from Beamalloy regarding its refusal to produce all documents contained in the Privilege Log Discovery (*see, e.g.*, DE 93; DE 116; DE 117; DE 121), and reviewed Beamalloy's *in camera* submissions and Attorney Sherri Lazear's affidavit. Therefore, the Court is satisfied that it may exercise its discretion to evaluate whether one of the exceptions enumerated in Rule 37(a)(5)(A) applies with respect to the Privilege Log Discovery. *See Houston v. C.G. Sec. Servs., Inc.*, 820 F.3d 855, 858 (7th Cir. 2016) (noting that the trial court has discretion in awarding sanctions).

analysis of this issue is not necessary, the Court notes that Beamalloy's claim of proprietary privilege lacks the support of any applicable law.[9]  Perhaps this explains, at least in part, why just two days before the hearing on Zimmer's motion to compel Beamalloy decided to change its claim of privilege for the 35 documents from "proprietary" to "work product."  At oral argument, the Court and Zimmer invited Beamalloy to explain its decision, but Beamalloy did not and still has not explained why it changed the privilege status of these documents.

Moreover, after the Court ordered Beamalloy to submit the 35 allegedly protected documents for an *in camera* review, Beamalloy, upon "further review," withdrew its privilege claim with respect to 13 of those documents, finding them to be "benign."  (DE 93).  As such, it appears that Beamalloy failed to properly review the Privilege Log Discovery prior to being ordered to submit the documents *in camera*.

Accordingly, Beamalloy has not substantially justified its claim of privilege with respect to all but two documents.  *See* Fed. R. Civ. P. 37(a)(5)(A)(ii).  Furthermore, there is no reason to believe it would be "unjust" for Beamalloy to pay Zimmer's attorney's fees and costs with respect to the Privilege Log Discovery, because Beamalloy knew or should have known the documents were not privileged.  *See* Fed. R. Civ. P. 37(a)(5)(A)(iii); *Rackemann*, 2018 WL 3328140, at *4-5.

However, Zimmer has not submitted documentation of the fees and costs it incurred in litigating the Privilege Log Discovery.  Thus, Zimmer will be granted leave to submit

---

[9] Beamalloy's proprietary privilege argument relied on a case from the Court of Chancery and a case from the Superior Court of Chancellery, both in the state of Delaware.  *See Matter of Heizer Corp.*, No. CIV.A. 7949, 1987 WL 19560 (Del. Ch. Nov. 9, 1987); *Gioia v. Texas Air Corp.*, No. 9500, 1988 WL 18224 (Del. Ch. Mar. 3, 1988).  However, "[u]nder Rule 501, the federal common law of privilege is to be applied, except with respect to an element as to which state law supplies the rule of decision."  *Babych v. Psychiatric Sols., Inc.*, 271 F.R.D. 603, 609 (N.D. Ill. 2010); *see also Motorola, Inc. v. Lemko Corp.*, No. 08 C 5427, 2010 WL 2179170, at *1 (N.D. Ill. June 1, 2010).  Beamalloy did not argue that any federal court recognizes a proprietary privilege.  Neither did Beamalloy argue that the rules of decision dictate that the Court should apply Indiana state law with respect to privilege or that an Indiana state court has recognized a proprietary privilege.

documentation of its reasonable attorney's fees and expenses incurred in litigating the production of the Privilege Log Discovery. *Cf. Watkins v. Trans Union, LLC*, No. 214CV00135WTLMJD, 2019 WL 336674, at *1 (S.D. Ind. Jan. 28, 2019) (reviewing the prevailing party's motion for fees under Rule 37(a), submitted with documentation of reasonable fees and costs incurred).

## IV. MOTION TO INTERVENE AND
## FOR A PROTECTIVE ORDER

### A. Standard

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. P. 26(c)(1). "The party requesting a protective order has the burden of demonstrating to the court that 'good cause' exists for its issuance." *Fed. Trade Comm'n v. Advocate Health Care Network*, 162 F. Supp. 3d 666, 667 (N.D. Ill. 2016) (quoting *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994)).

"In this instance, good cause has to be assessed while bearing in mind that" Howmedica's confidential information is at risk and that it "had no role in the fashioning of the protective order, which was crafted without anyone representing [its] interests." *Id.* The question is whether allowing Zimmer's in-house counsel to access the sensitive business information "creates an unacceptable risk of, or opportunity for 'inadvertent disclosure' of that information" to personnel at Zimmer involved in competitive decision making. *Id.* (quoting *Matsushita Elec. Indus. Co. v. United States*, 929 F.2d 1577, 1579 (Fed. Cir. 1991)); *see also Kraft Foods Glob., Inc. v. Dairilean, Inc.*, No. 10 C 8006, 2011 WL 1557881, at *1 (N.D. Ill. Apr. 25, 2011) (citations omitted). "The court must weigh the risk of inadvertent disclosure against the burden that would be placed on the requesting party if it does not receive the information it seeks." *Kraft Foods Glob., Inc.*, 2011 WL 1557881, at *1 (citing *Pfizer Inc. v. Apotex Inc.*, 744 F. Supp.

2d 758, 762 (N.D. Ill. 2010)).

The risk of inadvertent disclosure is higher in cases where "in-house counsel are involved in competitive decision making . . . ." *Advocate Health Care Network*, 162 F. Supp. 3d at 669 (citation omitted); *see U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed Cir. 1984) ("[W]here in-house counsel are involved in competitive decisionmaking, it may well be that a party seeking access should be forced to retain outside counsel or be denied the access recognized as needed."); *Kraft Foods Glob., Inc*., 2011 WL 1557881, at *2 (citation omitted). The phrase "competitive decision[]making" refers to an individual's "activities, association, and relationship with a client that are such as to involve . . . advice and participation in any or all . . . decisions (pricing, product, design, etc.) made in light of similar or corresponding information about a competitor." *U.S. Steel Corp*., 730 F.2d at 1468 n.3. The Court determines whether in-house counsel poses an unacceptable risk of inadvertent disclosure based on the facts of a particular case, on a "counsel-by-counsel basis." *Id.* at 1468; *see also Advocate Health Care Network*, 162 F. Supp. 3d at 668.

"Like retained counsel . . . in-house counsel are officers of the court, are bound by the same Code of Professional Responsibility, and are subject to the same sanctions. In-house counsel provide the same services and are subject to the same types of pressures as retained counsel." *U.S. Steel Corp.*, 730 F.2d at 1468; *see also Advocate Health Care Network*, 162 F. Supp. 3d at 668. At the same time, "in-house counsel serve as legal advocates and advisors for their client, [and] their continuing employment often intimately involves them in the management and operation of the corporation of which they are a part." *F.T.C. v. Exxon Corp*., 636 F.2d 1336, 1350 (D.C. Cir. 1980). Thus, exposing in-house counsel to a competitor's confidential business information in the course of discovery presents the risk of in-house counsel

inadvertently divulging or using that information to gain a competitive advantage. *See id.* ("The issue concerns not good faith but risk of inadvertent disclosure. [In-h]ouse counsel are employed full-time to advance the interests of their employer. They regularly meet with personnel of the corporation on day-to-day matters, wholly apart from this litigation." (citation and internal quotation marks omitted)); *Advocate Health Care Network*, 162 F. Supp. 3d at 670 ("The inescapable reality is that once an expert—or a lawyer for that matter—learns the confidential information that is being sought, that individual cannot rid himself of the knowledge he has gained[.]" (citation omitted)).

The Court weighs the legitimate interest of Howmedica in "ensuring that certain confidential information be protected," against Zimmer's competing interest to access that information for purposes of litigating its claims. *Autotech Techs. Ltd. P'ship v. Automationdirect.com, Inc.*, 237 F.R.D. 405, 406-07 (N.D. Ill. 2006).

**B. Analysis**

Howmedica asserts that the amended protective order should prohibit the production of any documents containing its sensitive business information (hereinafter referred to as "Highly Confidential" information). As discussed *supra*, this argument fails. In the alternative, Howmedica argues that Zimmer's in-house counsel should be denied access to Highly Confidential information. Additionally, Howmedica requests that the Court provide it the opportunity to redact documents containing Highly Confidential information before the documents are produced to Zimmer.

Howmedica objects to any employee at Zimmer (or Zimmer's outside counsel for that matter) reviewing or accessing Highly Confidential information because Zimmer and Howmedica are fierce competitors. Apparently, Howmedica does not believe that any safeguard

will prevent the inadvertent disclosure of Highly Confidential information to those involved in competitive decision making at Zimmer. There is some teeth to Howmedica's argument; it is impossible to totally eliminate the risk of inadvertent disclosure. *Advocate Health Care Network*, 162 F. Supp. 3d at 670 ("That risk is one that a party must, of necessity, endure."). However, to accept Howmedica's argument would result in a *per se* rule barring in-house counsel from accessing a competitor's information in the process of discovery. Courts have rejected this sort of *per se* rule.[10] *Kraft Foods Glob., Inc*., 2011 WL 1557881, at *5 (citing *U.S. Steel Corp.*, 730 F.2d at 1468).

The Court is mindful that Howmedica is not a party to this case; it is an intervenor. Beamalloy and Zimmer have no reason to protect Howmedica's business interests. *Advocate Health Care Network*, 162 F. Supp. 3d at 673 ("First, while the defendants say the protections of the confidentiality order are adequate, neither the FTC nor certainly the defendants had any concern about the Intervenors' confidential information when they hammered out the terms."). Accordingly, the amended protective order will restrict the settings and circumstances under which Zimmer's in-house counsel or bona fide experts and consultants may review Highly Confidential information.

Typically, the Court would assess the risk of inadvertent disclosure by in-house counsel by considering a specific individual. *U.S. Steel Corp*., 730 F.2d at 1468; *Advocate Health Care Network*, 162 F. Supp. 3d at 668; *Kraft Foods Glob., Inc*., 2011 WL 1557881, at *2 (citation omitted). Here, Zimmer has not designated or proposed an individual to review Highly

---

[10] Similarly, the Court rejects Howmedica's arguments that the protective order should prevent Zimmer's outside counsel from viewing outright and allow Howmedica the opportunity to redact Highly Confidential information from any documents prior to Zimmer's in-house or outside counsel viewing those documents. First, the Court has addressed these arguments *supra* to the extent they are at odds with Zimmer's motion to compel. Second, because Howmedica cannot demonstrate that Zimmer's in-house counsel pose an unacceptable risk of inadvertent disclosure, the Court need not consider whether additional restrictions are needed.

Confidential information for the Court to consider. At oral argument, Zimmer stated that it would restrict access to Highly Confidential information to in-house counsel not involved in competitive decision making. Zimmer also stated that any expert or consultant that reviewed the material would not be an employee of Zimmer. The Court is satisfied that under these conditions (and other conditions discussed *infra*), Zimmer's right to discovery revealing Highly Confidential information outweighs the risk that Howmedica's business interests will be compromised through inadvertent disclosure. *See Matsushita Elec. Indus.*, 929 F.2d at 1580. However, Howmedica has not identified documents or categories of information containing its sensitive business information that will be disclosed. Therefore, the Court will order Zimmer and Beamalloy in consultation with Howmedica to submit an agreed, amended, proposed protective order, that provides a higher degree of protection for Highly Confidential information according to the conditions set forth below.

The parties will submit an amended agreed proposed protective order that provides at least the following amendments to the current protective order:

(a)     Defined categories of information to be designated Highly Confidential, *see Advocate Health Care Network*, 162 F. Supp. 3d at 671;

(b)     Zimmer may file a motion seeking the Court's approval for one designee employed as in-house counsel to access Highly Confidential information. *Cf. id.* ("Information designated as 'Highly Confidential' can be shared with one designated representative of each defendant. The designation is subject to the court's approval . . . ."). Attached to the motion, Zimmer must submit a declaration or affidavit signed under oath by the designee, stating:

(i)     that the individual does not participate in "competitive decision making,"

28

as defined in this Opinion and Order, *cf. id.* at 670-71; *E.T. Prod., LLC v. D.E. Miller Holdings, Inc.*, No. 2:13-CV-424-PPS-PRC, 2014 WL 5334685, at *3 (N.D. Ind. Oct. 20, 2014) ("All Protected Material produced or provided in the course of this litigation shall be used solely for the purpose of preparing for trial and the actual trial of this litigation and for no other purposes whatsoever, and shall not be disclosed to anyone except in accordance with the terms of this Order.");

(ii)   the individual's responsibilities at Zimmer, *cf. Advocate Health Care Network*, 162 F. Supp. 3d at 671; and

(iii)   that the individual will not share information designated Highly Confidential, relate the substance therein to anyone not approved by the Court, or otherwise use the substance of Highly Confidential information for a purpose other than assisting in this litigation, *cf. E.T. Prod.*, 2014 WL 5334685, at *3;

(c)   Bona fide experts or consultants who are not employees or agents of Zimmer, Beamalloy, Howmedica, or any of their direct competitors, may access Highly Confidential information to the extent necessary for the conduct of this action, *cf. id.*;

(d)   Zimmer's designee and any bona fide experts or consultants may not access Highly Confidential information without first submitting an acknowledgement and agreement to be bound by the terms of the protective order similar to Exhibit A (DE 30-1 at 14-15) of the parties' current protective order, *cf. Advocate Health Care Network*, 162 F. Supp. 3d at 671; *E.T. Prod.*, 2014 WL 5334685, at *3; and

(e)      Zimmer's designee and any bona fide experts or consultants may only access Highly Confidential information at the offices of Zimmer's outside counsel, or using a secure electronic data room or document review platform using individual login identifications and passwords, *cf. Advocate Health Care Network*, 162 F. Supp. 3d at 669 n.2.

## V.  MOTION FOR AN EXTENSION
## OF TIME

Under Rule 16(b)(4), "[a] scheduling order may be modified only upon a showing of good cause." Fed. R. Civ. P. 16(b)(4); *United States v. 1948 S. Martin Luther King Drive*, 270 F.3d 1102, 1110 (7th Cir. 2001).  To demonstrate good cause, a party must show that despite its diligence, the time table could not reasonably have been met.  *Lawson v. Bethesda Lutheran Cmtys, Inc.*, No. 1:11-cv-228, 2012 WL 3288737, at *2 (N.D. Ind. Aug. 10, 2012) (citation omitted).

Zimmer moves to extend all discovery deadlines in this case by 60 days.  Zimmer argues that if the Court grants its motion to compel, then the Court should also extend discovery deadlines to allow sufficient time for Zimmer to recall deposition witnesses, review documents, and prepare for expert witness disclosures with the benefit of information produced pursuant to its motion to compel.  Beamalloy argues that the motion is an attempt to delay this matter.  (DE 65 at 10-11).

Because the Court will grant in part Zimmer's motion to compel, the Court is satisfied that Zimmer has demonstrated good cause for an extension of time to complete discovery. However, because the Court stayed all discovery-related deadlines at the hearing on Zimmer's motion to compel (DE 92), the Court now finds it necessary to confer with the parties during a telephonic status conference to discuss the discovery deadlines moving forward.  Therefore, the

Court will grant Zimmer's motion for an extension of time to complete discovery insofar as is necessary to review information produced pursuant to Zimmer's motion to compel.

## VI. CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART Zimmer's motion to compel (DE 61), denying the motion to the extent it seeks the production of BEAM017998 and BEAM083879.  Zimmer is GRANTED LEAVE to file a motion and supporting documentation seeking to recover the attorney's fees and costs it incurred litigating its motion to compel. Zimmer's motion is due on or before March 29, 2019, Beamalloy's response is due seven days after Zimmer files its motion, and Zimmer's reply is due three days after Beamalloy files its response.  The Court also GRANTS Zimmer's motion for an extension of time to complete discovery (DE 64) and sets this case for a scheduling conference March 26, 2019, at 10:00 a.m. The Court will initiate the call.

The Court GRANTS IN PART and DENIES IN PART Howmedica's motion to intervene as set forth herein.  (DE 73).  Zimmer and Beamalloy, in consultation with Howmedica, are to submit on or before April 5, 2019, an amended agreed proposed protective order consistent with this Opinion and Order.

SO ORDERED.

Dated this 21st day of March 2019.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge